IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  04-cv-01856-WYD-BNB

LIBERTY INSURANCE UNDERWRITERS, INC., a New York Corporation,

    Plaintiffs,

v.

WESTPORT INSURANCE CORPORATION, a Connecticut Corporation,

    Defendant.

**ORDER**

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendant Westport Insurance Corporation's Second Motion for Summary Judgment, filed February 23, 2006, ("Westport's Motion") and Plaintiff's Motion for Summary Judgment, filed March 2, 2006 ("Liberty's Motion").  This is an insurance case in which Plaintiff Liberty Insurance Underwriters, as assignee, brings claims against Defendant Westport Insurance Corporation for breach of its insurance contract with The Young Men's Christian Association of Metropolitan Denver ("YMCA").

By way of background I note that YMCA owns a Commercial Property insurance policy issued by Westport and a Difference in Conditions insurance policy issued by Liberty.  The insurance claim at issue in this case arises out of construction of the Susan M. Duncan YMCA facility in Arvada, Colorado (the "facility") and involves a dispute regarding coverage for YMCA's claims for property damage and business

interruption losses.

In August of 1999, YMCA noticed cracking and heaving of the slab-on-grade floor and damage to some interior walls and floors at the facility. YMCA notified Westport and Liberty of this damage in November 1999.[1]  Westport sent YMCA a reservation-of-rights letter on or about July 24, 2000, which made reference to the "earth movement" and "water" exclusions in the Westport policy. On or about October 3, 2001, Westport sent YMCA a check in the amount of $25,000. It is undisputed that no cover letter or other written document accompanied the check. However, on October 10, 2001, Donald Gardner, Vice President of the YMCA wrote a letter to Liberty stating that "Westport has issued its check number 033217 in the amount of $25,000 discharging its obligations under the policy. . . . we believe that Liberty now has the obligation to perform under the excess policy." In November, 2002, YMCA submitted claims for business loss interruption to Westport and Liberty. On January 15, 2004, Westport denied coverage for YMCA's business income claim for amounts in excess of the $25,000 previously tendered in connection with the physical damage claim. The January 15, 2004, letter stated that "[A]lthough an 'earth movement' exclusion . . . applied to the claim for physical damage to the Facility, Westport paid $25,000 on that claim pursuant to Limitation C.2.c. of the Policy for water under the ground surface pressing on, or flowing or seeping through foundations, walls, floors, or

---

[1] On April 28, 2003, YMCA filed a complaint against Liberty for coverage for its claims under the Liberty policy in civil action 03-cv-00760. YMCA and Liberty were able to settle their dispute, and YMCA's claims against Liberty were dismissed on April 19, 2004.

paved surfaces, basements, doors, windows or other openings." Limitation C.2.c. limits recovery for "direct physical loss or damage caused by" water to $25,000. Westport denied liability for YMCA's business interruption claim based on the earth movement exclusion and the final clause of the water damage limitation, which excludes "any resulting indirect or consequential loss, regardless of its amount."

In the pending motions, Westport asserts that it is entitled to summary judgment because Liberty's claims in this case are barred by the "earth movement" exclusion. Liberty asserts that Westport admitted coverage and waived or should be estopped from asserting the earth movement exclusion, as well as its coverage defenses. In the alternative, Liberty contends that there are disputed issues of material fact concerning the applicability of the earth movement exclusion.

II.   ANALYSIS

   A.   Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank*

*of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

      B.    <u>Whether Partial Summary Judgment is Proper in this Case</u>

          1.    <u>Liberty's Motion</u>

I first address Liberty's argument that Westport has admitted coverage or has waived or is estopped from asserting any defenses to coverage by payment of $25,000 to YMCA in October 2001.  Liberty notes that Westport made the October 2001 payment without setting forth a statement explaining the coverage under which the payment was being made.  Liberty submits the deposition testimony of Peter J. Hood, the Fed. R. Civ. P. 30(b)(6) witness designated by Westport, who testified in deposition that the $25,000 payment was made pursuant to the water damage limitation, but that the damage to the Duncan facility was not the result of water damage, but rather, "an earth movement loss."  Alternatively, Liberty maintains that Westport waived all coverage defenses except the "earth movement" exclusion by denying coverage on the specific grounds of that exclusion, and no others, or that Westport waived all coverage defenses by its unreasonable delay in handling the claim and making a coverage decision.

Colorado law provides that an insurer must raise or reserve all defenses known to it within a reasonable time or those defenses may be waived or the insurer may be estopped from asserting them.  *United States Fidelity & Guar. Co. v. Budget Rent-A-Car Sys., Inc.*, 842 P.2d 208, 210 n. 3 (Colo. 1992); *Commercial Union Ins. Co. v.*

*Roxborough Village Joint Venture*, 944 F.Supp. 827, 834 (D. Colo. 1996).  In addition, when an insurer denies coverage on a specific ground it waives the right to later assert additional defenses to coverage.  *Flatiron Paving Co. v. Great Southwest Fire Ins. Co.*, 812 P.2d 668 (Colo. App. 1990).  However, "while an insured may be estopped by its conduct or its knowledge from insisting upon a forfeiture of a policy, the coverage, or restrictions on coverage, cannot be extended by the doctrine of waiver or estoppel." *Hartford Live Stock Inc. Co. v. Phillips*, 150 Colo. 349, 372 P.2d 740, 742 (1962) (quoting 29A Am.Jur. § 1135).  The affirmative defenses Liberty seeks to strike all involve policy exclusions such as the "earth movement" exclusion, not defenses to coverage, such as lack of notice.

Although many of the specific policy exclusions Westport now asserts as affirmative defenses were not raised in its coverage denial letter of January 15, 2004, Westport cannot waive, or be estopped from relying upon, application of the "earth movement" exclusion or other policy exclusions because the doctrines of waiver and estoppel cannot be used to create coverage where none previously existed under the terms of the policy.  *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 620 (Colo. 1999); *see also Nicholis v. Zurich American Ins. Group*, 244 F.Supp. 2d 1144, 1157 (D. Colo. 2003).

I also reject Liberty's assertion that Westport waived all coverage defenses by its unreasonable delay in handling the claim and making a coverage decision.  I note that Liberty has not asserted a claim for bad faith in this case.  Whether Westport was unreasonable in its claim handling is a question of fact that is not appropriate for

resolution at the summary judgment phase. However, even if Westport's conduct was unreasonable, and even if Liberty could establish that Westport has waived or should be estopped from asserting certain coverage defenses, the conduct of the insured cannot act to "bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *McGowan v. State Farm Fire and Cas. Co.*, 100 P.3d 521, 526 (Colo. App. 2004). Liberty's motion for summary judgment is **DENIED**.

### 2. Westport's Motion

Having found that the doctrines of waiver and estoppel cannot be used to preclude Westport's assertion of the "earth movement" exclusion in its policy, I now turn to Westport's argument that the "earth movement" exclusion bars Liberty's claims in this case.

Under Colorado law, "an insurance policy is a contract, the interpretation of which is a matter of law." *State Farm Mut. Auto Ins. Co. v. Stein*, 940 P.2d 384, 387 (Colo. 1997). "Both the insured and the insurer are bound by the terms of the policy, unless those terms are waived or annulled." *Stein*, 940 P.3d at 387. "General rules of contract interpretation apply such that the policy is construed to promote the intent of the parties." *Id.* "In the absence of ambiguity, an insurance policy must be given effect according to the plain and ordinary meaning of its terms." *Id.* If, however, a policy provision is inconsistent or ambiguous, the policy must be construed against the drafter in favor of providing coverage for the insured. *Cotter Corp. v. American Empire Surplus Lines Inc. Co.*, 90 P.3d 814, 820 (Colo. 2004); *see also Arenberg v. Central United Life Ins. Co*, 18 F.Supp. 2d 1167, 1180 (D. Colo. 1998). A term in an insurance policy is

ambiguous if it is "susceptible on its face to more than one reasonable interpretation." *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). "In ascertaining whether certain provisions of a document are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed, and reference must be made to all the provisions of the agreement." *Kane v. Royal Ins. Co. of America*, 768 P.2d 678, 680 (Colo. 1989) (internal citations omitted).

The insurance policy that Westport issued to YMCA is an "all risk" policy. "An 'all risk' policy provides coverage for risks not usually covered under other insurance, and recovery is allowed thereunder for all losses . . . unless the policy contains a specific provision expressly excluding a particular loss from coverage." *Kane*, 768 P.2d at 679 n. 1. The Westport policy contains the following exclusion:

> B.   Exclusions.
>
> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> * * *
>
>    b.   Earth Movement
>
>    (1) Any earth movement (other than sink hole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising, or shifting. But if loss or damage by fire or explosion results, we will pay for that resulting loss or damage.

According to Westport, expert witnesses designated by both Westport and Liberty agree that the damage to the facility was caused by "an increase in moisture in

the soil underneath the YMCA building; that the increase in moisture caused soil particles to separate, which in turn caused expansion of the soil, resulting in an increase in the soil volume; that the soil rose upward under the slabs, causing the slabs to heave, with resulting damage." Westport's Motion at 3-4.  Westport asserts that this "heaving, lifting and shifting of soil" constitutes "earth movement" within the scope of the policy exclusion, and that the property damage at issue is not covered by the policy, even if such "earth movement" was an indirect or concurrent cause of the damage at issue.  Westport's Motion at 5.

Westport notes that the Colorado Court of Appeals recently interpreted an "earth movement" exclusion and found that exclusion applicable to damage caused by "pressure[] exerted by underground water associated with Colorado's clay soils or the fill materials underlying plaintiffs' homes." *Hoang v. Monterra Homes (Powderhorn) LLC*, 129 P.3d 1028, 1035, 1036-37 (Colo. App. 2005).  The earth movement exclusion at issue in *Hoang* read as follows:

> This insurance does not apply to . . . "property damage" . . . arising out of, caused by, resulting from, contributed to, aggravated by, or related to earthquake, landslide, mud flow, subsidence, settling, slipping, falling away, shrinking, expansion, caving in, shifting, eroding, rising, tilting or any other movement of land, earth or mud.

According to Westport, courts in other jurisdictions have found earth movement exclusions applicable when construing similar policy provisions.

After reviewing the materials submitted in connection with Westport's motion for summary judgment, as well as Liberty's response to Westport's Motion, I find that the

-8-

parties' expert witnesses are in general agreement that the property damage in this case occurred when increased moisture caused the soil under the facility to "expand." Liberty itself has characterized the damage in this case as resulting from "the expansion of soil beneath the building resulting from increased moisture content." Liberty's Response to Westport's Motion at 7. Liberty contends, however, that Westport's reliance on *Hoang* is misplaced because *Hoang* involved a general liability policy, as opposed to the "all-risk policy" at issue here, and because the exclusion in the *Hoang* policy is "broader, clearer and more specific than the Westport exclusion." Plaintiff's Response to Westport's Motion at 9. Liberty further asserts that Westport's policy only excludes damage caused by large-scale, naturally occurring earth movement and that the increased moisture content under the facility was caused, at least in part, by human action, rendering the exclusion inapplicable in this case.

    I agree with Liberty that the holding in *Hoang* is not controlling in this case. Unlike the provision construed in *Hoang*, which excludes a number of specific types of earth movement followed by the catch-all phrase "or any other movement of the land, earth or mud," the provision at issue in this case begins by excluding "any earth movement" but then qualifies that phrase by stating "<u>such as</u> earthquake, landslide, and mine subsidence or earth sinking, rising, or shifting." The conclusions reached by the Court in *Hoang* were based on the specific language of that policy. Simply because the loss at issue might be excluded under the *Hoang* policy does not necessarily mean it is excluded uner the policy at issue here.

    In construing earth movement exclusions, courts frequently consider whether the

-9-

exclusion applies only to losses caused by "natural" events, as opposed to those caused by "man-made" events. *See Fayad v. Clarendon Nat. Ins. Co.*, 899 So.2d 1082, 1086 (Fla. 2005); *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, (W.Va. 1998).

Westport has cited several cases from other jurisdictions in which courts found earth movement exclusions to be unambiguous and applicable to damage caused by both natural and human processes. Each of these cases construes nearly identical earth movement exclusions contained in policies issued by State Farm. *See Boteler v. State Farm Casualty Ins. Co.*, 876 So.2d 1067, 1069 (Miss. App. 2004); *Chase v. State Farm Fire and Casualty Co.*, 780 A.2d 1123, 1126 (D.C. App. 2000); *Alf v. State Farm Fire and Casualty Co.*, 850 P.2d 1272, 1276 (Utah 1993); *Village Inn Apartments v. State Farm Fire and Casualty Co.*, 790 P.2d 581, 582 (Utah App. 1990). The more recent cases, the State Farm polices at issue define "earth movement" to mean "the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion." *See Boteler*, 876 So.2d at 1069; *Chase*, 780 A.2d at 1126. In addition, each of the State Farm policies contains a "lead-in" clause that provides:

> We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, <u>arises from natural or external forces,</u>

or occurs as a result of any combination of these . . . [2]

(emphasis added). In each of these cases, the courts found that because the "lead-in" clause used by State Farm encompassed any earth movement regardless of its cause, the exclusions applied to "both natural and human processes." *See Boteler*, 879 So.2d at 1069; *Chase*, 780 A.2d at 1128-29; *Alf*, 850 P.2d at 1276; *Village Inn*, 790 P.2d at 583. However, these cases are limited to the specific language contained in the State Farm exclusion. As the court in *Chase* stated: "[w]e caution that our construction of the earth movement exclusion is sensitive to the precise language that State Farm has used, and that we might reach different conclusions if a similar but not identical exclusion in another company's policy were before us." *Chase*, 780 A.2d at 1128 n. 4.[3]

The majority of courts that have interpreted earth movement exclusions that do not contain the type of "lead-in" clause used by State Farm have concluded that such exclusions "apply only to earth movement that arises from natural events." *Fayad*, 899 So.2d at 1989, n.3; *Murray*, 509 S.E.2d at 485. In addition, Liberty has cited several cases from other jurisdictions construing earth movement exclusions *identical* to the exclusion at issue here that have concluded that the exclusion applies only to large scale, naturally occurring phenomenon. *Winters v. Charter Oak Fire Ins. Co.*, 4

---

[2]The "lead-in" clauses in *Alf*, *supra* and *Village Inn*, *supra*, do not contain paragraph (d).

[3]Westport has cited one unpublished case construing an earth movement exclusion identical to the exclusion at issue in this case. *See Holy Trinity Greek Orthodox Church v. Church Mutual Ins. Co.*, 2006 WL 18488 (D. Ariz., Jan. 4, 2006). However, for the reasons stated in this order, I do not find the reasoning of this case persuasive.

F.Supp.2d 1288, 1293 (D.N.M. 1998); *Sentinel Assocs. v. Am. Mfrs. Mut. Ins. Co.*, 804 F.Supp. 815, 818 (E.D. Va. 1992); *Rankin v. Generali-U.S. Branch*, 986 S.W.2d 237, 239-40 (Tenn. Ct. App. 1999); *American Motorist Ins. Co. v. R&S Meats, Inc.*, 526 N.W.2d 791, 795-96 (Wis. 1994).[4]

Here, the exclusion at issue here does not contain the "lead-in" clause discussed above, and neither the term "earth movement," nor the terms "earthquake, landslide, mine subsidence, earth sinking, rising, or shifting" are further defined in the policy. Liberty contends that the phrase "earth movement" must be construed in the context of the terms "earthquake, landslide, mine subsidence, earth sinking, rising, or shifting," all of which are "large-scale natural phenomenon." Westport contends that only the term "earthquake" necessarily refers to a large scale, natural event, and that landslides can be caused by man and mine subsidence is necessarily the result of human activity. Westport also notes that earth rising, sinking or shifting can have human and natural causes on any scale. I agree with the majority of cases that the terms "earthquake, and landslide" generally connote natural events. It is less clear, however, whether the terms "mine subsidence," and "earth sinking, rising, or shifting" are understood to refer only to natural phenomena. These terms could bar coverage

---

[4] Several of these cases applied the doctrine of *ejusdem generis*, which provides that "where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." *Noyes Supervision, Inc. v. Canadian Indemnity Co.*, 487 F.Supp. 433, 437 (D. Colo. 1980) (construing an underground work exclusion in an insurance policy). Colorado has applied the doctrine when interpreting contracts. *See Kinney v. Keith*, 128 P.3d 297, 306-07 (Colo App. 2005).

for solely natural events, or could refer to earth movement resulting from human or natural events.  Because the terms are susceptible to more than one reasonable interpretation, I find that the earth movement exclusion at issue is ambiguous, and "must have a more limited meaning than that assigned to it by the defendants."  *See Murray*, 509 S.E.2d at 485; *see also American Motorists Ins. Co.*, 526 N.W.2d at 796 (finding that an identical earth movement exclusion could not be read to include *all* earth movement, even when some human action caused the loss).

Finally, I note that the "lead-in" language in Westport's policy does not mandate a different result.  Westport's lead-in clause states: "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."  This language provides that coverage will be excluded so long as "earth movement" is a cause of the loss, even if other causes also contribute to the loss. Unlike the lead-in clause in the State Farm policy, which provides that earth movement is excluded regardless of the cause of the earth movement, the language in Westport's policy does nothing to clarify what constitutes earth movement in the first instance.

Because I find the earth movement exclusion to be ambiguous, I must construe the policy against Westport in favor of providing coverage for the insured.  Therefore, I construe the earth movement exclusion at issue to refer only to phenomena resulting from natural, rather than man-made forces.  It is unclear, however, whether the increase in moisture that caused the soil to expand upward, which in turn resulted in the damage in this case was the result of natural or man-made forces.  As discussed above, Liberty has raised a genuine issue of material fact concerning whether the

-13-

increased moisture content under the facility was caused, at least in part, by human action.[5]  Accordingly, entry of summary judgment is not appropriate.

III.    CONCLUSION

In conclusion, for the reasons set forth above, it is hereby

ORDERED that It is Plaintiff's Motion for Summary Judgment, filed March 2, 2006, is **DENIED**.  It is

FURTHER ORDERED that Defendant Westport Insurance Corporation's Second Motion for Summary Judgment, filed February 23, 2006, is **DENIED**.  It is

FURTHER ORDERED that the trial set to commence on **Monday, August 7, 2006**, is **VACATED**.  It is

FURTHER ORDERED that he parties shall telephone Chambers on **Friday, August 11, 2006**, to obtain an alternate trial date.

Dated:  July 28, 2006

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge

---

[5]Liberty states that "Westport's geotechnical expert . . . has testified that 'the distress at the [] facility was due to the swelling of the materials in which it was founded and that that resulted from water seeping through the facility' and that the water came from '[v]arious sources, from irrigation of the athletic field, precipitation falling on those areas, downspout discharge into the poorly drained area, allowing infiltration on the east side of the building.'"

-14-